## Case No. 9,170.

MARTIN v. WALKER.

[Abb. Adm. 579.] [2]

District Court, S. D. New York. Sept., 1850.

PRACTICE IN ADMIRALTY—LIBEL—AFFIDAVIT—BY ATTORNEY—BALANCE—JOINT ACCOUNTS—BAIL—STALE DEMAND.

1. The general course of admiralty procedure in this country requires a sworn libel as the foun-

---

1 [Reported by Abbott Brothers.]

dation of any process of arrest of person or property.

[Cited in The E. W. Gorgas, Case No. 4,585.]

2. When a libel is verified by an attorney in fact of the libellant,—as in case of the libellant's absence, &c.,—it is not necessary that the authority of the attorney to act should be made to appear when he attests the libel or files it; it is enough if he establishes such authority when it is called in question.

3. A mere general employment as proctor or attorney at law to prosecute a demand in a court of admiralty, is not sufficient to authorize the party employed to verify a libel as attorney in fact of the libellant.

4. No action can be maintained in a court of admiralty by one ship-owner against another to collect a balance to be determined in favor of the libellant on the settlement of the joint accounts of the parties.

5. In holding a respondent to bail, a court of admiralty will be governed much by the equitable considerations of the case.

6. Accordingly, where a libellant procured the arrest of respondent in a suit brought in a district different from that in which they both resided, upon a stale demand, of small amount, and which was already in litigation between the parties in the courts of the state in which they dwelt,—*held*, that the respondent ought to be discharged from the arrest.

7. A motion to set aside an arrest, founded on irregularity in the libellant's proceedings, is not within rule 25 of the circuit court, and will not be denied of course, merely because it was not made at the earliest day practicable after the arrest.

8. Compare the case of Duryee v. Elkins [Case No. 4,197], where it is held that admiralty has not jurisdiction to take an account of the profits of the voyage and determine the share due to a seaman employed on a "lay" or share of the proceeds.

This was a libel in personam filed by Mulford M. Martin against Lewis M. Walker, to recover for supplies and materials furnished to vessels of the respondent. The cause now came before the court on a motion to set aside the arrest of the respondent, and discharge the recognizance of bail given by him.

Scoles & Cooper and E. W. Stoughton, for the motion.

Beebe & Donohue, opposed.

BETTS, District Judge. The defendant moves to set aside his arrest in this cause, and that the recognizance of bail given by him therein for the limits, be discharged.

Both parties are residents of the district of New Jersey, and were such when this suit was instituted. On the 2d of August last, a libel in personam was filed, demanding of the defendant the payment of about $2,700, for supplies and materials furnished by the libellant to two vessels alleged to be owned by the respondent. The account is of long standing, the advances to the schooner Copper having been made more than ten years since, and to the schooner Roanoke between the years 1836 and 1841.

The libel alleges that supplies to the amount of $13,000 were furnished to the Roanoke, of which sum there yet remains due and unpaid about $2,150, besides interest, and in like manner to the schooner Copper to the amount of $139.

The respondent in his affidavit swears that the libellant was part owner with him of the schooner Roanoke, and that whatever supplies were obtained for her were furnished on account of the joint owners, and not for him individually. He further asserts that the charges in respect to the Copper, passed into the subsequent account in relation to the Roanoke, and have been adjusted between the parties in that account, and upon the merits of the case avers that he is not indebted to the libellant, but that a balance is due him on their transactions. It is moreover stated that the whole subject-matter is now in litigation between the parties on cross-bills filed by them respectively, in the court of chancery in the state of New Jersey.

Five objections to the plaintiff's right to maintain this action are taken: That the libel was not authenticated according to the requirement of the rules of this court, and that the process of attachment issued thereon was irregular. That no such affidavit of debt was made by the libellant as would entitle him to hold the respondent to bail in the suit. That one part owner cannot sue another in admiralty to recover advances made for their joint benefit. That the demands are stale, and if not actually barred by the statute of limitations, yet the court of admiralty will not give a party in such case the advantage of an arrest and imprisonment of the debtor on mesne proofs. That the voluntary selection of a home tribunal by the parties, for the litigation of these claims, precludes both from arresting each other out of that jurisdiction on the demands.

1. The attestation to the libel is made in the name of the libellant "by C. Donohue, his attorney," and in the jurat it is stated, that "the libellant is sick, and absent from the district, and could not swear to the libel," and the commissioner certifies that Donohue appeared before him, "who signed the libel as attorney in fact for the libellant."

For the respondent it is insisted that no fact is made to appear on this jurat authorizing the authentication of the libel otherwise than by the oath of the party himself, and that no arrest can be made of a party unless a libel regularly attested on oath is previously filed.

The *general course of admiralty practice* here unquestionably requires a sworn libel as the foundation of any process of attachment, (Ben. Adm. § 413; Dunl. Adm. Prac., 2d Ed., 126–128; Betts, Adm. 22, 23; Conkling, Prac. 423,) although the affidavit which justifies the arrest need not, it would seem, be made on the libel, but may be a separate deposition. Sup. Ct. Rules, 7. Such was the practice in the English admiralty, as the warrant of arrest issued previous to filing the libel. Clarke, Adm. tits. 1, 19; 2 Browne, Civ. & Adm. Law, 410, 411, 432, 434.

The rule of this court requires the verification to be in the libel itself. Rule 3. This oath must be made by the party himself, (rule 4,) unless the libellant is absent from the United States, or resides out of this district, and more than one hundred miles from the city of New York, (rule 93,) in which cases it may be made by an attorney in fact or proctor. Id.

In the present instance the libellant's residence was out of the district, but less than the distance of one hundred miles from the city. The case did not accordingly exist as one in which the oath of the party himself could be dispensed with, and the libel must be regarded as insufficiently authenticated without it.

It is not necessary that the authority of the attorney in fact to act for the principal should be made to appear when he attests to or files the libel. It is sufficient for him to establish that authority when it is called in question.

The affidavit of the libellant himself is read on this motion for that purpose. It is exceedingly loose and ambiguous on this point, and goes no further than to swear that the proctors were authorized and empowered to take all steps, in his absence, for the collection of the debt, and to assert that the suit is brought for his own benefit and with his consent and approbation.

On a question of rightful authority in the agent, something more than general and loose statements of that kind should be produced to support his acts. If no positive and formal appointment need be shown, at least there should be an explicit recognition of such agent in the character of an attorney in fact, to uphold his assuming that representation.

Mr. Donohue testifies, in his affidavit, that he verified the libel as agent of the plaintiff, and that he had full power and authority to verify the libel, and was fully authorized to file the same.

It is to be remarked that the libel was filed in the name of Mr. Beebe as proctor, and Mr. Donohue as advocate, and that these gentlemen are connected in business in practice at this bar. All that Mr. Donohue states in his affidavit may be satisfied by the general retaining or authorization of these gentlemen as attorneys to prosecute this demand, without there having been any direct and express appointment of Mr. Donohue as attorney in fact or special agent in the matter. Attorneys in law are agents of the principal (Story, Ag. § 23), but attorneys in fact are so called in contradistinction to attorneys in law, and may include all other agents employed in any business, or authorized to do any act or acts en pais for another. Id. § 25.

Judge Story, however, observes, the appellation sometimes designates persons who act under a special agency or a special letter of attorney; so that they are appointed in factum; for the deed or act to be done. Id.

§ 25. This position is supported by reference to Bacon's Abridgment, but Bacon clearly regards it as necessary, in order to constitute an attorney in fact, that his authority should be delegated by deed. 1 Bac. Abr. 306, tit. "Attorney."

So Comyn distinguishes between attorneys in court (Com. Dig. tit. "Attorney," B) and attorneys for other purposes, (Id. tit. "Attorney," C 1); and lays down the principle that, in the latter case, the appointment must be by deed or letter. Id. 5.

Admitting, however, that a parol appointment is sufficient, it would seem that the nature of the authority delegated, in the fair import of the rule of this court, would require an express authorization to do the particular act, when done by one as agent and not as proctor. One cannot, by virtue of his retainer as attorney in law, assume to act in the cause in the character of attorney in fact. It does not appear, upon the proofs offered in this case, that any other authorization was given by the libellant than the usual one given to attorneys in court to prosecute and collect demands. Upon a case standing in that attitude, it is plain that the libellant could not rightfully take an order to hold the defendant to bail.

2. The oath of indebtedness attached to the libel is not sufficiently positive to satisfy the rule on that subject. The evidence of indebtedness must be direct and explicit, and the agent states nothing beyond his information and belief deduced from the examination of documents. Graham, Prac. (1st Ed.) 130; 1 Archb. Prac. 52, 53, 58, 65. The preliminary affidavit being requisite in admiralty courts in order to hold to bail, the English rule with regard to the requirements of such affidavit would naturally be adopted as the practice of that court, especially as it is the guide to the practice of the circuit court, and that court supplies the authority to the district court in matters of procedure not regulated by specific rules. Dist. Ct. Rules, 260. Supplemental affidavits, to make up a case sufficient to justify holding to bail, were not allowed in this state, (Norton v. Barnum, 20 Johns. 337,) upon the English distinction, that affidavits to cure defects in the original one upon which the defendant was held to bail, were not admissible. They could not be allowed to retroact so as to authorize continuing the defendant under bail when he had been arrested by means of a defective affidavit.

3. The libellant, in his affidavit, does not deny the allegation of the respondent's deposition that he was part-owner with the libellant in the Roanoke. He asserts that he made the advances claimed in the character of ship's husband, and that the respondent is responsible to him for them. That may be so upon a due adjustment of the legal and equitable rights of the parties, but this is not a competent tribunal through which to enforce such adjustment. The acknowledged fact that

both parties are prosecuting suits against each other in New Jersey, in chancery, upon these claims, indicates plainly enough that the subject-matter is not one of simple indebtedness on the part of the one to the other. A libel cannot be maintained in this court by one owner against another, to collect a balance to be determined in his favor on the settlement of their joint accounts. The Fairplay (Case No. 4,615). The instance side of the court exercises in such cases no higher or other functions than a court of law, and before either tribunal it would be a bar to such action, to show that it was founded upon a counter and unadjusted responsibility of joint owners, it being insisted upon by each party that his advances to the common concern had been greater than those of his associate.

4. This objection does not apply to the small sum of $139 accruing from supplies furnished to the schooner Copper, and if the arrest of the defendant had been made for that demand alone, it might, perhaps, stand on the footing of an ordinary action by a materialman against the owner of a vessel.

In matters of bail, however, the court will be governed much by the equitable circumstances of each case. In this instance, the demand is exceedingly stale, and there is no allegation that the respondent could not have been arrested upon it within a reasonable period after the indebtedness had been incurred. Its justness is now denied by the affidavit of the respondent, and it is one of the subjects of litigation between the parties in their chancery suits. Under such circumstances it would not be reasonable or equitable to compel the respondent to give bail to this action in a state foreign to his domicil, and litigate the matter away from his own residence and that of the libellant, especially when it was already in prosecution between them before a home tribunal. All unwarranted arrests may be vacated, (rule 36,) and the court may, at its discretion, mitigate or enhance bail according to the rights of parties. Betts. Adm. 40. It appears to me that there is no proper ground in this case for the plaintiff to hold the defendant under arrest for a demand disputed by the latter, and which accrued more than ten years since.

5. I am not disposed to lay out of view the fact that the parties have selected a domestic forum for litigating these matters, which are now on investigation before it. Although I do not say that such fact is a legal bar to an action in this court on the same matters, it ought nevertheless to have a bearing in determining this question upon the equities between the parties. If the respondent has made his motion in due time, he is entitled, upon the principles already indicated, to his discharge, because of the defectiveness or irregularity of the proceeding on his arrest. Should his delay in making the application interfere with such relief as an absolute right, the equitable circumstances may properly be regarded by the court in determining whether he ought to be longer held in imprisonment in a controversy so circumstanced.

It is supposed by the libellant, that rule 25 of the circuit court governs the case, and that the respondent is precluded from making any application for relief after four days from his arrest. That rule, it must be remarked, does not in terms cover this case. The prohibition is in respect to orders to show cause of action, to mitigate bail, or for a bill of particulars, all of which presuppose regularity in the proceedings, and only provide for relief to the party proceeded against in connection with the continuation of the suit.

This application is founded upon irregularity and defectiveness in the proceedings of the libellant, and the respondent may rightfully appeal to the court for protection against it at any time after it is reasonably presumable he had means of ascertaining such irregularity, and especially when he has done nothing on his part to waive or cure it.

The arrest was made early in August last, and the respondent was confined in close prison thereon about ten days thereafter. No stated term of the court has been held since the arrest until the present sitting, nor has the Judge been residing in the city so that application could have been made to him personally for relief previous to the term now in session. Although the movement has not been at the very opening of the court, yet it does not appear that there has been any intentional delay or laches on the part of the respondent, and I am of opinion that he should not lose his claim to relief by the omission to bring forward his motion at the earliest day practicable.

The order will accordingly be, that he be discharged from arrest on his stipulating not to bring an action for false imprisonment against the libellant, or his attorney in fact.

If it was important to the interests of the libellant that his remedy should be sought in an admiralty court, he would have had easy access to the one in New Jersey, where both parties reside, and his arrest of the defendant in New York was needless and vexatious. The defendant is accordingly to be paid his taxed costs on this motion. Order accordingly.